UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL CHARLES WALSH, | ) |
| Plaintiff, | ) |
| v. | )  No. 1:22-CV-97 SNLJ |
| CARTER COUNTY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff Michael Charles Walsh for leave to proceed in forma pauperis. Upon consideration of the motion and the financial information provided therein, the Court concludes that plaintiff is unable to pay the filing fee. The motion will therefore be granted. Additionally, for the reasons discussed below, the Court will dismiss this action at this time pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard**

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, if the Court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff did not prepare the complaint using a Court-provided form. Instead, he submitted a typewritten complaint of his own creation, titled "Jurisdiction and Venue." Accompanying this document is an "Affidavit in Support of Civil Complaint and Equitable Relief" which is signed by plaintiff.

The complaint bears a caption identifying this Court as "United States District Court, Eastern District of Missouri Republic." Plaintiff filed the complaint against Carter County, Carter County Circuit Court, Mary M. Godsy, Carter County Circuit Court Clerk and W. Wade Pierce, Judge.

Plaintiff invokes federal subject matter jurisdiction based on diversity of citizenship. He alleges that he and defendants are diverse, and the amount in controversy exceeds $75,000. However, regarding the actual citizenship of himself and defendants, plaintiff states that he "has established a residency in the Missouri State for over one year." Plaintiff states that Carter County and Carter County Circuit Court are "foreign corporations" doing business in the State of Missouri. He further claims that Mary Godsy and Judge Pierce have their "principal place of business" in the State of Missouri and have been doing business in the State of Missouri for over one year.

In a section of the complaint titled "Facts," plaintiff asserts that he was denied "religious freedoms, equal protections and due process of law. In his "Affidavit in Support of Civil Complaint and Equitable Relief" plaintiff states:

> i, man, known to all men in name and style Michael-Charles, proper Christian appendage of Michael-Charles: son of Arthur, House of Walsh, am of full capacity. i am a living man, a disciple of Christ my Savior, and a servant of Almighty God. I am competent to handle my own affairs and litigate the same. i, am under no duress, drugs, or alcohol that i, man, am with full innumerable-unalienable God-given rights that are hereby retained, invoked, and engaged. i, am with no diminished capacity and/or diminished-status and am known as a States man fully aware of the pains and penalties of perjury before God and man. i, Michael-Charles, Estate Executor, sole beneficiary, real party in interest, affiant, and declares the following facts to be true and correct to the best of my knowledge so help me God[1]

Plaintiff alleges that his claims arose from his attempts to file a document in an ongoing civil action Carter County Court on or about April 6, 2022. Review of Missouri Case.Net reveals that plaintiff was representing himself in a divorce action in Carter County Court at that time. *See Walsh v. Walsh*, No. 19AK-FC00024 (37th Judicial Circuit, Carter County Court). The Honorable C. Wade Pierce is the Judge assigned to plaintiff's divorce proceedings.

Plaintiff complains that on April 6, 2022, he provided a document to defendant Godsy titled, "Notice of Appointment of Counsel," and he asked her to file it in his divorce action. He claims that Godsy initially told him that his counsel would have to e-file the document according to the Court rules. Plaintiff indicates that Godsy did, in fact, file the document on April 7, 2022, in the Court record, although plaintiff complains that it was "concealed" in the Court record because it was filed as "correspondence" from plaintiff. The Court has reviewed the document on Missouri.Case.Net and it states:

---

[1] The text is quoted without correction of any errors in the original.

3

> Comes now, Michael-Charles: Walsh, acting as respondent, and hereby gives this court notice of appointment of counsel; Salem-Blu: Kelly, has agreed for no consideration to offer the acting respondent, his beliefs in the above styled cause in regards to his God given Rights and all other Rights based upon religious beliefs or basis; Salem-Blu: Kelly, under our covenant will accompany oneself across the bar to effectively communicate his beliefs to oneself;
>
> it is not the intention of oneself or his counsel to do acts which would be considered the unauthorized practice of law an i, believe all criteria have been met to affirm no such acts of unauthorized practice of law have or will be committed during the proceedings of this matter.

The document is signed by both plaintiff and an individual known as salem-blu. However, salem-blu has not included a Missouri Bar number under his signature. Thus, there is no indication that salem-blu is licensed to practice law in the State of Missouri.

In the next section of the "Affidavit in Support of Civil Complaint and Equitable Relief," plaintiff complains that Judge Pierce denied "his counsel" entry in the Court for a hearing on April 15, 2022. Plaintiff does not identify who "his counsel" was at the time, or whether the counsel was in fact licensed to practice law in front of the State of Missouri. The Court is left to surmise that the "counsel" to which plaintiff refers in his complaint was the aforementioned salem-blu. The Court records on Missouri.Cases.Net indicate that plaintiff represented himself pro se at the hearing held on that date.

Plaintiff asserts that when he asked for a digital copy from defendant Godsy of the April 15, 2022, hearing, he was told that he would have to pay $25 for the record. Plaintiff argued with defendant Godsy telling her that he had been granted in forma pauperis and should be provided a copy of the transcript for free. However, on April 21, 2022, plaintiff filed correspondence with the Carter County Court acknowledging that although he had filed a motion to proceed in forma pauperis when he filed an interlocutory notice of appeal on January 25, 2022, the Southern District Court of Appeals had informed him that the motion to proceed in forma pauperis had not yet been

4

ruled on by the Carter County Circuit Court.² Plaintiff requested, in his April 21, 2022, correspondence, to have "an immediate ruling" on his motion to proceed in forma pauperis so that he could get free digital copies of the court records in his divorce action.

A judgment of dissolution was entered on August 16, 2022. *See Walsh v. Walsh*, No. 19AK-FC00024 (37ᵗʰ Judicial Circuit, Carter County Court). Plaintiff filed an appeal of the judgment of dissolution, as well as a "Notice of Fact and Witness Accounting of C. Wade Pierce's Criminal Activities."³ Additionally, on July 26, 2022, prior to the judgment of dissolution, plaintiff filed a "Notice and Demand for the Production of C. Wade Pierce Oath and Office and Bond," as well as "Notice and Demand for the Production of Mary Godsy Oath and Bond."

Plaintiff asserts that Judge Pierce and Godsy violated his religious rights and due process of law by both failing to grant him in forma pauperis status and denying him free digital copies of hearings. He claims that they also conspired against his First Amendment right of religion by taking his counsel to aid him in the lower court. Plaintiff alleges that Carter County is the "PARENT CORPORATION" and Carter County Court is one of its subsidiaries. Thus, they should be liable for all harm that has fallen plaintiff.

The Court notes that plaintiff has not identified his religion in his complaint, nor has he indicated in factual terms why he believes defendants have infringed on his religious rights. Nonetheless, plaintiff seeks $1 million from defendants as relief in this action.

---

²Plaintiff appealed an order of sanction against him, entered on January 18, 2022, by the Honorable C. Wade Pierce. Plaintiff failed to file documents in response to discovery requests, appear for a deposition, respond to a motion to compel, or file a Consolidated Statement of Property and Debts or Income and Expenses Statement. It appears that this was the *eighth interlocutory appeal* plaintiff filed in his divorce action.

³Plaintiff's notice to proceed in forma pauperis on appeal, filed on October 27, 2022, was granted on that same date.

**Discussion**

Plaintiff invokes this Court's subject matter jurisdiction on the basis of diversity of citizenship. He therefore has the burden of establishing such jurisdiction. *See Hertz Corp. v. Friend,* 559 U.S. 77, 96 (2010) (the party asserting diversity jurisdiction has the burden of establishing it). To so establish, plaintiff states the parties are diverse, identifies himself as a Missouri resident, and attempts to give the impression that the defendant is domiciled elsewhere and only works in Missouri. However, plaintiff offers no genuine averment that any of the defendants are citizens of a state other than Missouri. Rather, plaintiff states merely that defendants are all "doing business in the State of Missouri." He does not identify their states of residence at all. This is not sufficient to establish diversity jurisdiction.

The Court therefore has serious reservations about whether this case involves a dispute or controversy properly within its jurisdiction. However, for the sole purpose of conducting the required review of the complaint, the Court will presume that subject matter jurisdiction exists.

Having thoroughly reviewed and liberally construed the complaint, the Court concludes that it is frivolous and fails to state a claim upon which relief may be granted. Plaintiff cannot state a claim for relief against defendants under 42 U.S.C. § 1983 as currently stated.

Plaintiff filed his § 1983 action against Carter County, Carter County Circuit Court, Mary M. Godsy and Judge Pierce alleging that defendants "conspired" to violate his rights under the First and Fourteenth Amendments by discriminating against his religion, due process and equal protection rights.

Plaintiff's claims against the Carter County Circuit Court are legally frivolous because the Circuit Court cannot legally be sued. *See Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82

(8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such.").

Although a local governing body such as Carter County can be sued directly under § 1983, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), to prevail on this type of claim, the plaintiff must establish the municipality's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Carter County.

First, plaintiff can show that Carter County had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.,* 420 F.3d 841, 847 (8 th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible ... for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.,* 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the

7

inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity 's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity 's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity 's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim against Carter County by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *SM v. Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, there are no facts supporting the proposition that plaintiff's constitutional rights were violated due to an unconstitutional policy or custom. He has failed to articulate any unconstitutional policy or custom allegedly implemented by the Carter County Circuit Court. He also fails to present any facts indicating that Carter County failed to train its employees. Instead, plaintiff's complaint focuses on his complaints about his failure to get the results he desires from

his divorce proceedings in Carter County Circuit Court.

As such, plaintiff's official capacity claims against the Carter County Circuit Court must be dismissed. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

Furthermore, plaintiff's assertions against Judge Pierce are also subject to dismissal, as the judge is entitled to immunity for his actions overseeing plaintiff's divorce case. Because a judicial officer, exercising the authority in which he or she is vested, should be free to act upon their own convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th

Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

Because the actions of which plaintiff complains in this lawsuit regarding Judge Pierce, relate to his judicial decisions in plaintiff's divorce case, Judge Pierce is entitled to absolutely immunity.

Quasi-judicial immunity, also known as "absolute quasi-judicial immunity," is a species of absolute judicial immunity. *Smith v. Finch*, 324 F. Supp. 3d 1012, 1020 (E.D. Mo. 2018). Quasi-judicial immunity provides that individuals whose "duties ... are 'integral parts of the judicial process,'" are completely immune from civil rights suits "as long as the judicial function was granted immunity under common law at the time § 1983 was enacted." *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (citing *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)); *see also Myers v. Morris,* 810 F.2d 1437, 1465-67 (8th Cir. 1987) ("We also agree with the district court that nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions."), abrogated on other grounds by *Burns v. Reed*, 500 U.S. 478 (1991). Regarding Circuit Court Clerks such as defendant Godsy, "Clerks are …immune only for acts that may be seen as

10

discretionary, or for acts taken at the direction of a judge or according to court rule." *Geitz v. Overall,* 62 F. App'x 744 (8th Cir. 2003); citing *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993); *see also, Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir.1997) and *Robinson v. Freeze,* 15 F.3d 107, 108–09 (8th Cir.1994).

In this case, plaintiff is upset that although defendant Godsy allowed him to file a document from his purported attorney on April 7, 2022, she had first told him that it would need to be electronically filed according to the Court rules. However, when he noticed that the document was filed on the Court docket, the title of the document was "correspondence." Plaintiff does not indicate that he was prejudiced by the title of the document on the Court docket, as he indicates that his document was brought before the Court at a hearing on April 15, 2022, wherein the matter of whether he could be represented by an outside individual was discussed. Plaintiff, however, takes issue with the fact that Judge Pierce denied his request for salem-blu to act as his attorney during that same hearing.

The Court takes judicial notice that an Administrative Order entered by Circuit Judge David P. Evans of the 37th Judicial Circuit in Carter County Circuit Court on April 27, 2015, states:

> The court notes Carter, Howell and Oregon Counties, within the Thirty-Seventh Judicial Circuit will commence e-filing on June 15, 2015. In preparation for that transition, the court now orders that:
>
> 1. Paper documents mailed and postmarked prior to June 15, 2015, shall be accepted for filing;
>
> 2. Effective June 15, 2015, all pleadings, motions and other documents shall be filed electronically as provided by Supreme Court Rule 103 and Court Operating Rule 27, except for the following documents which may be filed on paper:
>
>    (a) Documents filed by pro se litigants;
>    (b) Documents filed in the municipal division(s); and,
>    (c) Documents prepared in the courtroom during trials and hearings.

Given that defendant Godsy appeared to have been following the Court's Administrative Order when she was responding to plaintiff regarding the filing process, the Court cannot say that she was attempting to violate his due process rights by telling him that his "attorney" would have to electronically file his document referring to his appointment of new counsel. However, it matters not, because ultimately, Godsy filed plaintiff's notice in the Court record, and plaintiff's notice relative to his attempts at having new counsel was heard by the Court at the next hearing.

Plaintiff's next assertions relative to defendant Godsy appear to be that his due process rights were violated by Godsy when she failed to provide him with free transcripts of the April 15, 2022, hearing. However, as noted above, defendant acknowledges that defendant Godsy told him that he had not yet been granted in forma pauperis status in his divorce case, and he would need to apply for and be granted such status to receive a free transcript, or he could pay $25 per transcript to receive the requested records. Furthermore, on April 21, 2022, plaintiff filed correspondence with the Carter County Court acknowledging that although he had filed a motion to proceed in forma pauperis when he filed an interlocutory notice of appeal on January 25, 2022, the Southern District Court of Appeals had informed him that the motion to proceed in forma pauperis had not yet been ruled on by the Carter County Circuit Court. Plaintiff requested, in his April 21, 2022, correspondence, to have "an immediate ruling" on his motion to proceed in forma pauperis so that he could get free digital copies of the court records in his divorce action. Given these facts, the Court cannot find that defendant Godsy is liable for violating plaintiff's due process rights under the Fourteenth Amendment for following Court rules.[4]

---

[4] Plaintiff also alleges in a conclusory manner that defendants Godsy and Pierce were acting in a conspiracy together to violate his rights. "To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). *See also Burbridge v. City of St. Louis, Missouri,* 2 F.4th 774, 782-83 (8th Cir. 2021) (explaining that "[t]o prevail

Last, the Court notes that plaintiff has not identified his religion or a basis for a religious discrimination claim by defendants in this action. The First Amendment provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I. The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, "protects religious observers against unequal treatment" and against "laws that impose special disabilities on the basis of religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. --, 137 S.Ct. 2012, 2021 (2017*); see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Those "basic principle[s]" have long guided the Supreme Court. *Trinity Lutheran*, 137 S.Ct. at 2019–2021. *See, e.g. Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 16 (1947) (a State "cannot exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, because of their faith, or lack of it, from receiving the benefits of public welfare legislation"); *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 449 (1988) (the Free Exercise Clause protects against laws that "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens").

Even liberally construing the complaint, plaintiff does not name a defendant who is allegedly responsible for promulgating or adopting any a policy that allegedly infringed on his free exercise rights. Plaintiff has not indicated that he was punished for practicing his unnamed religion. He has not alleged that he was denied, because of his faith, the right to participate in proceedings

---

on a [42 U.S.C.] § 1983 conspiracy claim, [the plaintiff] must show that (1) the defendants agreed to deprive him of his constitutional rights; (2) at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) [the plaintiff] was injured by the overt act"). Additionally, in order to prevail, the plaintiff is required to prove the deprivation of a constitutional right or privilege. *Riddle v. Riepe,* 866 F.3d 943, 948 (8th Cir. 2017). *See also Draper v. City of Festus, Mo.,* 782 F.3d 948, 953 (8th Cir. 2015). "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018). Plaintiff has failed to show a deprivation of a constitutional right in this action. Thus, he cannot show a conspiracy claim.

13

in Carter County Court. And he has not asserted that he was required to choose between his religious beliefs and the right to represent himself in his divorce proceedings. For these reasons, the Court finds that plaintiff has failed to state a religious discrimination claim.

Similarly, plaintiff has failed to allege a violation of the Equal Protection Clause. At the outset, the Court notes that plaintiff has not identified the "suspect class" to which he belongs. However, because plaintiff asserts that he has been subjected to religious discrimination, the Court presumes that plaintiff is asserting a religious discrimination claim under the Equal Protection Clause of the Fourteenth Amendment against defendants.

To allege a religious discrimination claim under the Equal Protection Clause, plaintiff must show that the government failed "to treat similarly situated people alike." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (holding no valid equal protection claim where plaintiff failed to present evidence to enable the court to discern the contours of the class to which he claimed to be similarly situated and only ambiguously asserted denial of an adequate opportunity to practice his religion). As a "threshold matter," a plaintiff must allege less-favorable treatment than similarly situated persons specifically "on account of . . . membership in a protected class." *Bogren v. Minn.*, 236 F.3d 399, 408 (8th Cir. 2000); *see Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994) ("absent a threshold showing that [a plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim").

Here, plaintiff has failed to allege not only his religion, but also that he received different treatment from defendants than similarly situated persons with a different religion. The Fourteenth Amendment requires that the government treat similarly situated people alike. *See Murphy v. Missouri Dep't of Corr.,* 372 F.3d 979, 984 (8th Cir. 2004) (citing *Rouse v. Benson*, 193 F.3d 936,

14

942 (8th Cir. 1999); *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985)). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause. *Bogren*, 236 F.3d at 408 (citing *Klinger*, 31 F.3d at 731). "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Klinger,* 31 F. 3d at 731 (citing *More v. Farrier*, 984 F.2d 269, 271 (8th Cir.), cert. denied, 510 U.S. 819 (1993)). Because the complaint is completely silent as to the treatment of similarly situated groups, the Court finds that plaintiff has not sufficiently pled an equal protection violation.

Plaintiff fails to provide, and independent inquiry fails to reveal, a legal basis for his claims that defendants engaged in an act or omission that entitles plaintiff to monetary or equitable relief. While this Court must liberally construe pro se filings, this Court may not construct a legal theory for plaintiff. *See Stone*, 364 F.3d at 914-15. The Court therefore concludes that this action lacks an arguable basis in law and is frivolous. *See Neitzke*, 490 U.S. at 328.

The Court finds that the complaint contains no facts that would state a plausible claim for relief and is therefore subject to dismissal on the basis that it fails to state a claim upon which relief may be granted. *See Twombly*, 550 U.S. at 570.  The Court can envision no amendment to the complaint that would cause it to state a valid claim over which this Court would have subject matter jurisdiction. The Court will therefore dismiss this action at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 17th day of November, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE